UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:11-CR-28 (VARLAN/GUYTON) |
| ARMANDO GUZMAN VILLEGAS, | ) ) | |
| Defendant. | ) | |

**ORDER REVOKING THE MAGISTRATE JUDGE'S RELEASE ORDER**

This matter is before the Court on the government's Emergency Motion Under 18 U.S.C. § 3145(a) for Revocation of Magistrate Judge's Release Order filed on March 22, 2011 [Doc. 14]. The Court conducted a hearing on March 24, 2011. After careful consideration of the record in this case, the relevant law, and the arguments of the parties, and for the reasons explained below, the Court revokes the release order.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

On or about March 14, 2011, a sealed criminal complaint was filed against the defendant, Armando Guzman Villegas[1] [Doc. 3]. The complainant, Drug Enforcement Administration ("DEA") Task Force Officer Jeremy Maupin ("Maupin"), stated that on or about March 12, 2011, in Roane County, in the Eastern District of Tennessee, the defendant violated 18 U.S.C. §§ 1952(a)(1) and 2 [*Id.*].

---

[1] By order of Magistrate Judge Guyton, the complaint and the affidavit in support of the complaint were unsealed on March 23, 2011 [Doc. 23].

In Maupin's affidavit in support, Maupin identifies himself as a narcotics investigator employed by the Knoxville City Police Department who has been assigned as a DEA Task Force Officer since 2008 [*Id.*]. In that capacity, Maupin is charged with investigating large-scale drug trafficking organizations [*Id.*]. He has experience in conducting surveillance, analyzing telephone records, interviewing witnesses, executing search and arrest warrants and other investigative techniques [*Id.*]. He also has received training in drug trafficking and money laundering investigations [*Id.*].

Maupin states that, in the morning hours of March 12, 2011, he received information from a known, reliable source of information ("SOI") that a large shipment of cocaine and/or marijuana proceeds ("drug proceeds") would be traveling through the Eastern District of Tennessee [*Id.*]. The SOI informed Maupin that the drug proceeds would be conveyed in a tractor-trailer with a California license place driven by a Hispanic male traveling southbound on Interstate 81 and then westbound on Interstate 40, continuing toward the United States-Mexico border [*Id.*]. Based on this information, Maupin established surveillance in the area of Interstates 81 and 40 and observed a tractor-trailer with a California license plate, operated by a Hispanic male, which had a heavy-duty key lock securing the rear doors of the tractor trailer, traveling below the posted speed limit westbound on Interstate 40 in Roane County, Tennessee [*Id.*]. Based on these observations, as well has the appearance of the operator, and his experience and knowledge that couriers employed by drug trafficking organizations often travel below the posted speed limit and use "smuggler's locks" to secure the contents of the

2

trailer, Maupin contacted the Tennessee Highway Patrol Interdiction Team who pulled over the tractor-trailer after observing it follow too closely to another vehicle.

During the stop, the driver, who is now the defendant, informed the trooper that he owned the trailer and that a trucking company owned the tractor and consented to a search of the tractor and trailer [*Id.*]. A police K-9 certified in the detection of controlled substances then was employed and provided a positive indication for the odor of a controlled substance emanating from the vehicle [*Id.*]. The defendant agreed to drive the vehicle to a secondary location for the search [*Id.*]. During this search agents removed twenty-three pallets of boxes labeled "Iceland Pure Spring Water" [*Id.*]. Maupin noticed that, on one pallet, the boxes in the center were sunken and one was protruding from the side [*Id.*]. One of those boxes was opened, and Maupin found multiple duct taped bundles with "20" marked on each bundle [*Id.*]. The search continued and fifteen more boxes containing 204 of the same type of duct taped bundles of United States currency were found [*Id.*]. Maupin estimates that the value of these bundles is $4,080,000.00 on the basis of his belief that the bundles contain $20,000.00 each [*Id.*]. Maupin also states that, after waiving his *Miranda* rights, the defendant's passenger and co-defendant stated that "Armando knows all the people. I never seen the money" [*Id.*].

On or about the next day, the defendant, Armando Guzman Villegas, was charged in a sealed indictment with violation of 18 U.S.C. §§ 1952(a)(3) and 2 as follows:

> The Grand Jury charges that, on or about March 12, 2011, in the Eastern District of Tennessee and elsewhere, the defendants, ARMANDO GUZMAN VILLEGAS and FRANCISCO JAVIER CRUZ-RAMIREZ, aided and abetted

by each other, traveled from the State of Virginia to the State of Tennessee, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, conspiracy to distribute controlled substances in violation of Title 21, United States Code, Section 846, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such activity.

[Doc. 4]. The indictment also sets forth forfeiture allegations, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), alleging that the defendant must forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to approximately $4,000,000.00 in United States currency, seized from the defendant and his co-defendant on or about March 12, 2011 [*Id.*].

The defendant appeared for his initial appearance and arraignment before Magistrate Judge Shirley on March 15, 2011 [Doc. 5]. Brad Henry was appointed to represent the defendant and the defendant entered a not guilty plea [*Id.*]. The government moved for a detention hearing asserting that the defendant was a serious risk of flight and a danger to the community, and, pursuant to 18 U.S.C. § 3142, Magistrate Judge Shirley ordered that a detention hearing be held on March 22, 2011 and that the defendant be temporarily detained [Doc. 9].

On March 22, 2011, the defendant appeared before Magistrate Judge Guyton for the detention hearing [Doc. 15]. The government moved for the defendant's detention, arguing that he is both a danger to the community and a flight risk [Doc. 18]. The government proffered to the magistrate judge the background of the case, including that the defendant's

case is part of a larger investigation from another district, which has revealed a large-scale, high-volume, Mexican cocaine trafficking organization that traffics kilograms of cocaine from Mexico to California [Doc. 23]. The government indicated that this organization loads cocaine onto tractor-trailers with a cover load consisting of items like children's toys or, in the defendant's case, bottled water in California[2] [*Id.*]. Then, the organization transports the cocaine to the East Coast, where it is sold [*Id.*]. The proceeds are thereafter packaged and concealed in another cover load so that it can be taken back to California, and subsequently to Mexico [*Id.*].

The government then presented the testimony of Deputy United States Marshal Kevan Thompson ("Thompson") and Blount County Deputy Sheriff David Mendez ("Mendez") [*Id.*]. Thompson testified that the United States Marshals Service processed the defendant and took the defendant's fingerprints, which revealed a criminal history involving a misdemeanor in California in connection with the name Rojelio Martinez Robles [*Id.*].

Mendez, who stated he is fluent in both Spanish and English, testified about transcribed jail calls between the defendant and his wife since the defendant's arrest on March 12, 2011 [*Id.*].[3] Mendez testified that, during the calls, the defendant and his wife

---

[2] In its memorandum in support, the government submits that the defendant's co-defendant recently was arrested on November 1, 2010 by the DEA in Los Angeles, California, after loading approximately fifteen kilograms of cocaine into a tractor-trailer destined for New Jersey which also included boxes of children's toys [Doc. 24].

[3] The defendant objected to the introduction of the transcripts on the basis that Mendez was not a certified translator, which was overruled by Magistrate Judge Guyton [Doc. 23]. After a review of the record, the Court agrees with that ruling.

5

discussed obtaining an attorney for the defendant [*Id.*]. The defendant's wife informed the defendant that the attorney she initially spoke with quoted a retainer of $25,000, but later increased it to $75,000 because, according to the defendant's wife, the attorney feared for his family's safety [*Id.*]. In another call, the defendant's wife informed the defendant that "The other [attorneys] are too expensive, the one I had before called me and told me he wanted $75,000 because he is afraid of what could happen to his family[,]" to which the defendant responded "Oh, ok" [*Id.*]. Mendez also testified that, during one call, the defendant told his wife "Take the bicycle from there and use the other one. Put it with one of your sisters. Do you understand me?" [*Id.*]. On cross-examination, Mendez admitted that he did not know what the defendant was referring to or talking about other than what is contained in the text of the transcriptions [*Id.*].

On the basis of this testimony, the government proffered that the defendant was using coded language in his conversations with his wife [*Id.*]. In particular, the government submitted that the word "bicycle" means some sort of conveyance that contains contraband, either money or drugs [*Id.*]. The government also argued that the fact that attorneys feared for their safety in representing the defendant indicated that the defendant presents a danger [*Id.*]. The government further argued that the defendant has no ties to this district, and that the fact that the fingerprints belong to someone other than a person named Armando Guzman Villegas cuts in favor of detention because it suggests flight [*Id.*].

The defendant submitted several letters from family and friends, a letter from a treating psychiatrist of the defendant's wife, a letter from a potential employer, and various

photographs of the defendant with his family [*Id.*]. The defendant's counsel argued that the government can request detention only on the basis that the defendant poses a risk of flight because the defendant has not been charged with a crime of violence or a violation of section 1591, nor any crime with a penalty exceeding a term of imprisonment of ten or more years [*Id.*]. The defendant's counsel also argued that he was not caught with guns or drugs, but with money, and that he was cooperative and consented to a search [*Id.*]. Further, counsel argued that the defendant has a job waiting for him in California at a business that makes pulley key chains, which does not involve driving a tractor-trailer [*Id.*].

The defendant's counsel also argued that the defendant's wife relies upon the defendant both emotionally and financially, and that, based on the letters submitted, the defendant is a caring father, a trustworthy person, and a hard working person [*Id.*]. The defendant's counsel indicated that the defendant has four daughters, ages twenty to eight, the oldest of which is a university student who works at the Coach store [*Id.*]. Also, the defendant's counsel pointed out that the defendant is a permanent resident of the United States, and has been since January 2000, and prior to that, he was here for approximately twelve years on a work visa [*Id.*]. The defendant's counsel then argued points regarding the various section 3142(g) factors [*Id.*].

On the basis of the arguments of counsel, the testimony, the evidence submitted by proffer and otherwise, the relevant statute and case law, Magistrate Judge Guyton found that conditions existed that would ensure the safety of the community and the defendant's

presence in court and accordingly ordered that the defendant be released on personal recognizance with conditions[4] [*Id.*].

After this pronouncement, the government announced its intention to seek review of the order of release and made an oral motion to stay the release order pending a hearing before this Court [Doc. 18]. Over the defendant's objection, Magistrate Judge Guyton granted a stay in light of the nearness of the review hearing, the standard of review, and the circumstances of the case [Docs. 18, 23].

Also on March 22, 2011, the government filed the Emergency Motion under 18 U.S.C. § 3145(a) for Revocation of Magistrate Judge's Release Order [Doc. 14]. The government moves for this Court to revoke the magistrate judge's order releasing the defendant pending trial in this case [*Id.*].

A hearing was held before the undersigned on March 24, 2011 [Doc. 25]. The Court heard arguments from both parties, most of which reiterated the arguments made before Magistrate Judge Guyton. The Court took the matter under advisement and entered an order

---

[4] Magistrate Judge Guyton set the following conditions: that the defendant (1) must not violate any federal, state or local law while on release; (2) must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a; (3) must immediately advise the court, defense counsel, and the United States attorney in writing before any change in address or telephone number;(4) must appear in court as required and must surrender to serve any sentence imposed; (5) report to the United States Probation Office as directed; (6) maintain or actively seek employment; (7) surrender any passport to the United States Probation Office; (8) be restricted in his travel to the Eastern District of Tennessee and the Central District of California; (9) refrain from possessing a firearm destructive device, or other dangerous weapon; (10) refrain from excessive use of alcohol; (11) refrain from use or unlawful possession of a narcotic drug or other controlled substance, unless prescribed by a licensed medical practitioner; (12) submit to any testing required by the pretrial services office or the supervising officer to determine whether the defendant is using a prohibited substance; and (13) not operate or be a passenger in any vehicle with more than two axles [Doc. 17].

of temporary detention pending completion of the hearing pursuant to 18 U.S.C. § 3142(f) [Doc. 26]. The Court noted the need to made a decision promptly, and indicated that it would endeavor to do so.

## II. RELEVANT LAW

Pursuant to 18 U.S.C. § 3145(a), a district judge may review a magistrate judge's release order on motion by the government. In relevant part, section 3145 provides:

> (a) Review of a release order.--If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court--
>
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and
>
> (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.
>
> The motion shall be determined promptly.
>
> . . . .

18 U.S.C. § 3145.

This Court's review is de novo. *See United States v. Montgomery*, No. 09-20101, 2010 WL 1052339, at *1 (E.D. Mich. Mar. 19, 2010) (citing case law indicating that, although the Sixth Circuit has not squarely addressed the issue of the proper standard of review of a magistrate judge's detention order, the majority of the circuits that have considered the issue have ruled that a de novo review is appropriate). "[M]eaningful de novo review means that the district court should engage in the same analysis, with the same

9

options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000). Accordingly, the provisions of 18 U.S.C. § 3142, which governs the release or detention of a defendant pending trial, apply.

Pursuant to section 3142(e), the Court may order the detention of a defendant pending trial if, after a hearing, the Court determines that no condition or set of conditions will reasonably assure the appearance of the defendant as required and the safety of another person in the community. 18 U.S.C. § 3142(e). The government has the burden of demonstrating by a preponderance of the evidence that the defendant is a flight risk, or by clear and convincing evidence that the defendant is dangerous to another person or the community. *Montgomery*, 2010 WL 1052339, at *2 (citing *United States v. Hinton*, 113 F. App'x 76 (6th Cir. 2004) and *United States v. Ellison*, No. 04-80335-03, 2007 WL 106572 (E.D. Mich. Jan. 8, 2007)). *See also* 18 U.S.C. § 3142(f). In determining whether the government meets its burden of persuasion, there are certain factors enumerated in section 3142(g) that the Court must consider:

> (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.
>
> . . . .

18 U.S.C. § 3142(g). The Court also must consider all reasonable less restrictive alternatives to detention. 18 U.S.C. § 3142(e). And the Court must not forget the presumption of innocence. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").

Although release is the default position of the law under section 3142, *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010), the default is modified by a rebuttable presumption set forth in the statute. Here, however, both parties agree that no rebuttable presumption applies.[5]

---

[5] The government suggested during the hearing that it could be argued that a rebuttable presumption applies in this case given the unlawful activity alleged in the indictment. The government, however, expressly stated that it was not making such argument in this case and conceded that no rebuttable presumption applies.

## III. ANALYSIS

During the hearing, defense counsel argued, on the basis of *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988), and *United States v. LaLonde*, 246 F. Supp. 2d 873 (S.D. Ohio 2003), that the Court is without authority to order detention on the basis of dangerousness. These cases generally indicate that a defendant cannot be subject to detention on the basis of a showing of danger to the community alone. *See also United States v. Hilmer*, 797 F.2d 156 (3d Cir. 1986) (finding that the statute authorizes detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes specified in the statute); *United States v. Chavez-Rivas*, 536 F. Sup. 2d 962 (E.D. Wis. 2008) (finding that the defendant could not be detained on the basis of dangerousness alone). *But see United States v. Holmes*, 438 F. Supp. 2d 1340 (S.D. Fla. 2005) (finding that dangerousness as grounds for detention is not excluded in cases involving detention hearings brought under section 3142(f)(2) and that dangerousness may be considered in all cases whether arising under subsection (f)(1) or (f)(2)). It appears to the Court that the Sixth Circuit has not addressed this argument, and, although the defendant's argument may or may not have merit in this Circuit, the Court finds it unnecessary to consider because, as explained below, the Court believes the defendant poses a flight risk and that no conditions will reasonably assure his appearance as required. Accordingly, the Court turns to the section 3142(g) factors.[6]

---

[6] The Court considers these factors out of the order presented in section 3142(g).

**A.    The Nature and Circumstances of the Offense Charged, Including Whether the Offense is a Crime of Violence, a Violation of Section 1591, a Federal Crime of Terrorism, or Involves a Minor Victim or a Controlled Substance, Firearm, Explosive, or Destruction Device**

The defendant is charged with violation of 18 U.S.C. § 1952(a)(3), that is traveling in interstate commerce with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, conspiracy to distribute controlled substances in violation of Title 21, United States Code, Section 846. According to the text of the statute, the relevant question is whether the offense charged involves a controlled substance. Here, the indictment says that it does and the Court believes that to be true. The defendant argues that no drugs were found in his trailer, but the Court finds this is an argument that makes a distinction without a difference. According to the record and the evidence proffered to the Court, the trailer contained four million dollars worth of drug proceeds, which the government asserts is 200 kilograms worth of cocaine. Although the defendant is not charged with violating 21 U.S.C. § 846, the conspiracy to distribute controlled substances is inextricably tied to the offense charged, and the Court cannot ignore this fact.[7]  *See Stone*, 608 F.3d at 945 (noting that "[a] grand jury indictment, by itself,

---

[7] The defendant directs the Court to *United States v. Say* for the proposition that the offense of being a felon in possession of a firearm is a crime of violence, but the offenses of conspiracy and unlawful interstate transportation and receipt of firearms are not crimes of violence, and seems to argue by analogy that the offense of possession of controlled substances is a crime involving controlled substances but that the offense of traveling in interstate commerce to promote conspiracy to distribute controlled substances is not crime involving controlled substances. 233 F. Supp. 2d 221, 225 (D. Mass. 2002) (citing *United States v. Phillips*, 732 F. Supp 255 (D. Mass 1990) and *United States v. Dillard*, 214 F.3d 88 (2d Cir. 2000)). The Court notes that there has been some disagreement and concern about *Phillips*, and it appears that this logic has not been employed in this Circuit. Thus, even though the Court finds the defendant's argument unconvincing because the

13

establishes probable cause to believe that a defendant committed the crime with which he is charged" for purposes of determining whether there is probable cause to believe that a defendant committed one of the crimes identified in section 3142(e)(3)).

Accordingly, because this is a crime involving controlled substances, or at least the proceeds therefrom, the Court determines that this factor weighs in favor of a finding of dangerousness and detention. *See Stone*, 608 F.3d at 947 n.6 (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) for the proposition that the harm to society caused by narcotics trafficking is encompassed within Congress's definition of danger).

### B. The History and Characteristics of the Defendant

#### 1. The Defendant's Character, Physical and Mental Condition, Family ties, Employment, Financial Resources, Length of Residence in the Community, Community Ties, Past Conduct, History Relating to drug or Alcohol Abuse, Criminal History, and Record Concerning Appearance at Court Proceedings

The defendant was born in Mexico. He has seven siblings, two brothers and five sisters, all of whom reside in Mexico. The defendant and his wife of twenty years, however, currently reside in Moreno Valley in Riverside County, California. They have four daughters, ages eight through twenty. The oldest daughter is a university student who works at a Coach store when not in school, but they all rely on the defendant for support. The defendant contends that family is very important to him, and his family cares for the

---

alleged unlawful activity is an essential element of the charged offense that cannot be overlooked, it declines to entertain this argument.

defendant's mother. Indeed, the letters submitted to the Court indicate that the defendant is very devoted to his family.

The defendant has been a permanent resident of the United States since January 2000. Prior to becoming a permanent resident, the defendant was in the United States on a work visa, for approximately twelve years. He attended school until the 8th grade, and he has completed training at a welding school. Prior to being arrested in connection with this case, the defendant worked as a truck driver. The defendant is the president of his own company called AG Freight Services, a licensed and bonded trucking company in Moreno Valley, California. The Court has been informed that, if he is released, the defendant has a job waiting for him in California at a business that makes pulley key chains, which does not involve driving a tractor-trailer.

The defendant's financial resources are not fully known, but it has been represented to the Court that the defendant has the means and ability to travel back and forth between the Eastern District of Tennessee and his home in California. Indeed, his wife has made the trip at least twice since the defendant's arrest.

The defendant has no serious medical concerns, but he has been diagnosed with diabetes, for which he takes medication. The defendant does not appear to have a history of mental health treatment or of suicidal or homicidal ideation. It further appears that the defendant does not drink alcohol and does not use illegal drugs, and he has no history of substance abuse or receiving any such treatment.

The defendant also has no criminal record based on his name, but fingerprint checks revealed a charge against a Rogelio Martinez Robles for petty theft in 1996. The sentence in that case was two years probation, one day in jail, and a fine. The Court recognizes that there is some disagreement as to whether this history applies to the defendant.

Finally, there is no indication that the defendant has a record of failing to appear at court proceedings.

The Court finds that some of these facts, specifically, the defendant's family ties, length of residence in and ties to his community in California, criminal history, record of appearing at court proceedings, character, history relating to drug and alcohol abuse, and employment circumstances weigh in favor of release. Nevertheless, the Court finds that some of these factors also weigh in favor of finding that the defendant is a flight risk.

Although the defendant is a permanent resident of the United States, which weighs in favor of release, *United States v. Motamedi*, 767 F.2d 1403, 1407-08 (9th Cir. 1985), the defendant was born in Mexico and has several family members still living there. While the Court recognizes that the defendant's nationality does not point to a conclusory determination that the defendant poses a serious risk of flight, the Court may consider this fact. Moreover, it was represented to the Court that, since the defendant's arrest, the defendant has discussed his contacts in Mexicali with his wife and the defendant's wife has been to Tijuana to see "some papers about a car." Also, the defendant has informed the Court that he has the means to travel between California and this District. The Court finds that the defendant could use the same means to flee to Mexico, especially given the close

proximity of his home to that country. The defendant argues that taking the defendant's passport would ensure that the defendant would not flee to Mexico. The Court, respectfully, disagrees and finds the case law cited in support by the defendant distinguishable because the defendant lives in a state bordering Mexico, which the Court is believes is a seemingly likely and easy place for the defendant to flee. *See United States v. Say*, 233 F. Supp. 2d 221, 226 (D. Mass. 2002) (finding risk of flight to Vietnam, where the defendant had relatives, to be minimized by requiring the defendant to surrender his passport). Moreover, it appears that the defendant was not forthcoming with the probation officer about his financial means and the fact that he owns his own company, and this fact concerns the Court. Finally, although the defendant has ties with the community in which he lives in California, the defendant has no ties with this District, and the Court may consider this fact. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (finding that "community" embraces ties to the community in which the charges are brought and the community in the United States to which the defendant has ties).

> **2. Whether, at the Time of the Current Offense or Arrest, the Defendant was on Probation, on Parole, or on Other Release Pending Trial, Sentencing, Appeal, or Completion of Sentence for an Offense under Federal, State, or Local Law**

It does not appear that the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law at the time of the current offense. Accordingly, this factor weighs against detention.

## C. The Nature and Seriousness of the Danger to Any Person or the Community That Would be Posed by the Defendant's Release

The defendant asserts that there is no danger to any person or the community that would be posed by his release. He asserts that he is no history of violence and that the letters submitted to the Court demonstrate that he is a gentle man. The government asserts that the defendant himself is in danger if he is released given that an attorney had reservations about representing the defendant for safety reasons. In light of the evidence submitted to the Court, the Court finds that this factor weighs in favor of release.

## D. The Weight of the Evidence Against the Defendant

The Sixth Circuit has recently noted that this factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citation omitted). The Court construes this statement to mean both evidence of dangerousness and evidence of risk of flight given that only dangerousness was at issue in *Stone*. In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are. *Id.*

The government submits that everything it presented at the hearing before Magistrate Judge Guyton and the hearing before this Court goes to the weight of the evidence of the defendant's dangerousness and the weight of the evidence of the defendant's risk of flight. As an initial point, the Court notes that it may consider what was proffered by the government and the defendant. *See Stone*, 608 F.3d at 948-49 ("[C]onducting a bail hearing by proffer is acceptable under the law and at the discretion of the district court.") (citing

18

*United States v. Webb*, 238 F.3d 426 (table), 2000 WL 172160, at *2 (6th Cir. 2000), and *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996)). *See also* 18 U.S.C. § 3142(f).

The Court finds there is a sizeable amount of evidence regarding the defendant's flight risk: the phone conversations the defendant had with his wife after he was arrested that, among other things, discuss his wife going to Tijuana and individuals in Mexicali; the amount of money found in the defendant's trailer; the fact that the defendant was not forthcoming about his financial resources; the fact that the defendant has financial resources to travel between California and this District, which also would allow him to travel elsewhere; and the fact that the defendant has family and contacts in Mexico. The Court, however, finds the evidence of the defendant's dangerousness not clear and convincing, even though the offense charged involves alleged drug trafficking, which is encompassed within Congress' definition of danger, because the defendant is not alleged to be a violent or dangerous person, the defendant has little, if any, criminal history, and there are no other facts suggesting the defendant poses a danger to any person or the community, except for the fact that he may have been involved in a conspiracy to traffic controlled substances. Accordingly, the Court finds the weight of evidence of risk of flight weighs in favor of detention, but that the weight of the evidence of dangerousness favors release.

## IV. CONCLUSION

After reviewing and considering the entire record, the relevant case law, 18 U.S.C. § 3142, and the arguments of the parties, the Court concludes that the government has met its burden of demonstrating by a preponderance of the evidence that the defendant poses a flight

19

risk. The Court also concludes that the government has failed to meet its burden of demonstrating by clear and convincing evidence that the defendant is dangerous to another person or the community. Furthermore, the Court finds that there are no conditions or combination of conditions of release that would reasonably assure the Court that the defendant would appear as required. Accordingly, the Court determines that the defendant should be detained pending trial of this matter.

It is therefore **ORDERED** that the defendant, Armando Guzman Villegas, be detained pending the trial of this matter. He is hereby committed to the custody of the Attorney General or his designated representative for confinement in a correctional facility separate, to the extent practicable, from persons awaiting sentencing or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. Upon order of this Court or another Court of the United States, or upon request of an attorney for the Government, the person in charge of the correctional facility shall deliver the defendant to the United States Marshals for the purpose of an appearance in connection with a judicial proceeding.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE